**PAUL O'LEARY LUMBER CORPORA-TION, Plaintiff-Appellant-Cross Appellee,**

v.

**MILL EQUIPMENT, INC., Defendant-Appellee,**

**Wilco Machine Works, Inc., Defendant-Appellee-Cross Appellant.**

**No. 30762.**

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1971.

E. L. Snow, T. Kenneth Watts, Meridian, Miss., for appellant.

R. B. Deen, Jr., Ralph E. Young, Jr., Meridian, Miss., for Wilco Machine Works, Inc.

William B. Compton, Meridian, Miss., for Mill Equip., Inc.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

PER CURIAM:

This case reaches us as an appeal by Paul O'Leary Lumber Corporation and cross-appeal by Wilco Machine Works, Inc. At the heart of the controversy is the Selective Beaver No. 2, a machine that is designed to produce rough lumber and wood chips in one operation at a profitable rate. The machine was manufactured by Mill Equipment, Inc. and sold by Wilco to O'Leary. It performed miserably. The Beaver's failure was attributable primarily to its cutting knives, which were not strong enough for the hard Southern yellow pine used in O'Leary's operation. The Beaver had previously been operated in the Pacific Northwest where the timber is softer than yellow pine. Largely as a result of the inadequacy of the Beaver, O'Leary failed and went out of business. O'Leary sued Wilco and Mill for $307,969.23. This alleged damage figure is comprised of $101,445.26 in losses on account of delay in delivery of the machine and shutdown time due to its malfunction and $206,-523.97 in lost profits.

The district court awarded O'Leary $20,816.71 and granted, with one exception, Wilco's cross-claim against Mill for Wilco's damage payment to O'Leary. The court found the difference in the sale

price of the Beaver (approximately $48,-000) and its value as delivered to be $30,000. It added to this figure $1,475.-23 for repairs to the Beaver, $5,000 for delay in shipping, and $10,000 for losses during O'Leary's shutdown time. The court set off against this recovery O'Leary's note to Wilco for the sale price of the Beaver and related machines minus the value of the Beaver and other equipment repossessed by Wilco. O'Leary complains of the inadequacy of the district court's damage award. Wilco argues that it is not liable in any amount to O'Leary, because the contract of sale effectively disclaims any implied warranty by Wilco that the Beaver was fit, suitable, or effective to do the job it was purchased to do.

■ We affirm. Appellant failed in this Court and below to clearly specify his damages. O'Leary had been losing money for several consecutive years and purchased the Beaver in hopes of reversing this trend. Nevertheless, the Beaver was a new machine, never before tried in the Southeast. There is little or no evidence that even if the Beaver had operated as represented O'Leary would have made a profit. Moreover, as a rule new enterprises with no track record are not permitted to recover for lost profits. Certainly, the trial court's rejection of O'Leary's claim to lost profits was not clearly erroneous. Fed.R.Civ.P. 52(a). O'Leary also sought damages for losses caused to its business by the failure of the Beaver. Its presentation on this point was far from lucid, providing the Court little guidance in determining losses attributable to the Beaver. We think the measure of damages employed by the district court was correct.

■ Wilco cross-appeals, asserting disclaimer of any implied warranty of suitability on the Beaver. The "guarantee" provision in the sales agreement reads:

There are no warranties by the Seller except those expressly stipulated. In no event shall the seller be liable for consequential damages.

This agreement was drawn prior to Mississippi's adoption of the Uniform Commercial Code. Under Mississippi common law, disclaimers of implied warranty were valid and sellers who were not manufacturers were held not to impliedly warrant the fitness and suitability of the products they sold. Wilco relies on these two rules in arguing no liability to O'Leary and cites numerous cases to support its position.

■■ We find the cited cases distinguishable from the instant case. First, under pre-Uniform Commercial Code Mississippi law, if an implied warranty of suitability was to be disclaimed, it had to be disclaimed specifically. F. O. Grey v. Hayes-Sammons Chemical Co., 5th Cir. 1962, 310 F.2d 291. The Wilco disclaimer is skeletal and says nothing about implied warranty. In contrast, the warranties in the cases relied on by Wilco, see e. g., Stribling Bros. Machinery Co. v. Girod Co., 239 Miss. 488, 124 So.2d 289, 292 (1960), are detailed and specifically disclaim implied warranties.

■ Secondly, we agree with the district court that the manufacturer-seller issue is controlled by Dry Clime Lamp Corp. v. G. L. Edwards, 5th Cir. 1968, 389 F.2d 590, 594 (Mississippi law applied). Although Wilco did not manufacture the Beaver, it drew plans and blueprints for the installation of the equipment, installed it, and supervised its operation and repair. Its involvement was not quite as extensive as that of the seller in Dry Clime, but certainly much greater than that of the grain salesman in Rizzo v. Jordan Wholesale Co., 214 So. 2d 604 (Miss.1968), a case heavily relied on by Wilco, who was in the truest sense a salesman and nothing more.

Affirmed.