720 F.2d 1201
 1984 A.M.C. 2962
 In the Matter of the Complaint of HERCULES CARRIERS, INC.,
for exoneration from or limitation of liability as
Owner of the M/V Summit Venture,
Plaintiffs- Appellees,
v.
STATE OF FLORIDA, et al., Claimants,
Canadian Transport Company, Clipper Maritime Co., Ltd., I.S.
Joseph Company, Inc., Ultraocean S.A., Sabine
Towing & Transportation Company,
Claimants- Appellants.
 No. 81-6005.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 16, 1983.
Opinion on Granting Rehearing En Banc Dec. 13, 1983.
 
 Jack C. Rinard, Ted R. Manry, III, Tampa, Fla., for Canadian transport et al.
 Kent Westmoreland, Houston, Tex., for Sabine Towing.
 Dewey R. Villareal, Jr., Tampa, Fla., for Hercules Carriers.
 James O. Davis, Jr., Tampa, Fla., for Judith T. Curtin.
 Richard F. Ralph, Miami, Fla., for Greyhound Lines.
 David G. Hanlon, Tampa, Fla., for State of Fla. (Dept. of Transp.).
 Appeals from the United States District Court for the Middle District of Florida.
 Before GODBOLD, Chief Judge, HENDERSON and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 On May 9, 1980, the M/V Summit Venture, owned by Hercules Carriers, Inc., a foreign corporation, struck the Sunshine Skyway Bridge which spans the entrance of Tampa Bay. As a result of the collision, damaged and sunken portions of the bridge blocked other vessels' passage to and from the port of Tampa for several days.
 
 
 2
 Hercules Carriers, as the Summit Venture's owner, filed in district court a Complaint for Exoneration from and Limitation of Liability. The owners of delayed vessels responded with claims for damages for the costs incurred in maintaining those vessels and their crews. These costs included provisions, wharfage charges, additional towing charges, fuel, seamen's wages and loss of the vessels' use.
 
 
 3
 The district court had already dismissed similar claims made by other parties against another ship, the Capricorn. A few months before the Summit Venture struck the Skyway, the Capricorn had been involved in another collision, the wreckage of which had also blocked passage to and from the port of Tampa. The district court, for reasons stated in its earlier order of dismissal in the Capricorn's case, dismissed as well the present claims against Hercules.
 
 
 4
 A panel of this circuit has affirmed the district court's earlier order dismissing claims against the Capricorn. Kingston Shipping Co. v. Roberts, 667 F.2d 34 (11th Cir.1982). That affirming decision controls the present case.
 
 
 5
 AFFIRMED.
 
 
 6
 CLARK, Circuit Judge, concurring specially.
 
 
 7
 I. Recovery for Pecuniary Loss for Unintentional
 
 Interference with Contract
 
 8
 The judgment of the district court must be affirmed in light of Kingston, but respectfully, I think that the panel in Kingston erred in its holding and in its reliance on Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). The issue in this case is whether a shipowner, whose vessel negligently obstructs passage of the channel from the port of Tampa to the Gulf of Mexico, is liable in damages for actual costs incurred by vessels which are required to remain in the port pending removal of the obstructing vessel.
 
 
 9
 The Robins rule is not applicable because the facts here and in Kingston are significantly different from the facts in Robins. In Robins, the time charterer of the S/S Bjornefjord sought damages from the dry dock company for loss of use of the chartered vessel. While the Bjornefjord was in the dry dock for normal repairs, the dry dock company negligently damaged the vessel's propeller causing her to be detained several additional days. The dry dock company settled with the Bjornefjord's owner. As to the time charterer, the Supreme Court held, "[A] tort to the person or property of one man [the ship's owner] does not make the tortfeasor liable to another [the time charterer] merely because the injured person was under a contract with that other, unknown to the doer of the wrong." 275 U.S. at 309, 48 S.Ct. at 135, 72 L.Ed. at 292. The Court elucidated its grounds for denying recovery to the time charterer as follows:
 
 
 10
 The question is whether the respondents [the time charterers] have an interest protected by the law against unintended injuries inflicted upon the vessel by third persons who know nothing of the charter. If they [the charterers] have, it must be worked out through their contract relations with the owners, not on the postulate that they have a right in rem against the ship.
 
 
 11
 275 U.S. at 308, 48 S.Ct. at 135, 72 L.Ed. at 292.
 
 
 12
 The classic case favored by the text writers to illustrate the rationale for barring an action by a contracting party not in privity with the tortfeasor is an early Georgia case. In Byrd v. English, 117 Ga. 191, 43 S.E. 419 (1902), defendants, while excavating for a building, cut a line owned by Georgia Electric Light Company which powered plaintiff's printing factory. Plaintiff sued the excavator for damages due to the interruption of his printing business. Judge Candler wrote:
 
 
 13
 What was [plaintiff's] right to that power supply? Solely the right given him by virtue of his contract with Georgia Electric Light Company, and with that contract defendants are not even remotely connected. If, under the terms of his contract, he is precluded from recovering from the electric light company, that is a matter between themselves for which the defendants certainly can not be held responsible. They are, of course, liable to the [electric] company for any wrong that may have been done it, and the damages recoverable on that account might well be held to include any sums which the company was compelled to pay in damages to its customers; but the customers themselves can not go against the defendants to recover on their own account for the injury done the company.
 
 
 14
 117 Ga. at 194, 43 S.E. at 420 (emphasis added).
 
 
 15
 In Robins and Byrd, plaintiff A was in contract with party B, who failed to deliver contracted for benefits to A because of interference from tortfeasor C. Since A's injury resulted from B's failure to perform his contractual obligations, A's remedy, if any, is against B on the contract, and not against C, who cannot be touched for want of privity. The instant case, however, is solely a matter of tort. There is only plaintiff A who has suffered economic loss at the hands of tortfeasor C. There is no party B, no contract upon which A might base a claim for recovery, and no privity bar to an action against C.[1]
 
 
 16
 In short, the relationship between the parties in Robins is fundamentally different here; regrettably, Robins has been extended to situations such as the case here and been interpreted to mean that economic losses not associated with physical damage are not collectible. It is this misapplication of Robins that led the Kingston panel astray in expounding its rationale for denying recovery. In deference, I should point out that the Kingston panel did not wholeheartedly endorse the wisdom of the derived rule, which I believe the circuit must examine en banc.[2]II. Recovery for Pecuniary Loss Not Associated with
 
 Physical damage
 
 17
 The negligent obstruction of a navigable channel violates a duty owed to other users of the channel, and is a violation of federal statute.[3] If one negligently obstructs a channel with a sunken ship or other submerged debris, the owner of a vessel striking such an obstruction can recover damages for repair to his vessel, as well as for loss of use; there can be no doubt that in such a case the defendant's negligence is the direct, proximate and foreseeable cause of the shipowner's physical and economic damages.[4] In the same way, one can anticipate that negligent obstruction of the only outlet from a port will cause economic damage to those shipowners whose vessels are trapped in the port and delayed thereby.
 
 
 18
 Here, appellee's vessel negligently collided with a bridge, resulting in collapse of the bridge and obstruction of the outlet to the port of Tampa. The only two theories that could be advanced to deny recovery for the economic losses sustained by the owners of ships trapped in the bay are (1) the loss is too remote--the practical need for curtailing potentially limitless liability requires that a line be drawn somewhere, and here that line must be drawn to preclude the shipowners from recovering purely economic losses arising from a collision in which they were not directly involved; and (2) economic loss, unaccompanied by physical damage is unrecoverable as a matter of law.
 
 
 19
 With regard to the first theory, a court can deny recovery for damages if the loss is catastrophic and the tortfeasor could not foresee the consequences. Res. of Torts 2d Sec. 435(2). Recovery will likewise be denied when the damages are too tenuously or remotely related to defendant's negligence. Petition of Kinsman Transit Authority, 388 F.2d 821 (2d Cir.1968). The potential for limitless liability need not be a problem in this case, if claims are limited to vessels trapped inside the bay. It is true that a vessel in New Orleans about to embark for Tampa might be delayed in departing because of the obstruction. However, that vessel can alter its plans to effect a reduction or elimination of its loss; consequently, its losses may be deemed too remote to permit recovery. The vessel caught within the port of Tampa, however, has no means of avoiding the consequences of the negligence of the obstructing vessel. To the extent its losses may be calculated with reasonable certainty, no reason exists to deny recovery.
 
 
 20
 As to the second theory, several cases indicate that recovery is permissible notwithstanding the lack of physical damage to plaintiff's property.[5] In Union Oil Co. v. Oppen, 501 F.2d 558 (9th Cir.1974), the Ninth Circuit held that a clearly finite group of plaintiffs could recover their heavy financial losses, although they suffered no physical damage. Plaintiffs, commercial fishermen, lost profits due to defendant's oil spill in the Santa Barbara Channel. The court allowed recovery for the purely economic loss resulting from the fish kill, but allowed recovery only to commercial fishermen, although the spill affected other broad categories of activity. The court specifically noted the loss of the use of private pleasure craft, but stated that the plaintiffs asserted "injury to their commercial enterprises, not to their 'occasional Sunday piscatorial pleasure.' " 501 F.2d at 570.
 
 
 21
 Limits more relevant to the circumstances of the present case have been suggested. In In re Lyra Shipping Company, Ltd., 360 F.Supp. 1188 (E.D.La.1973), plaintiffs, having sustained no physical damages, sought recovery of financial losses arising from the collision of the Galaxy Faith with the Industrial Canal Locks. Judge Cassibry, in a thoughtful opinion, stated in a footnote:
 
 
 22
 Defendant, in terrorem, suggests that to permit recovery of such costs to all carriers for the entire period the Industrial Canal Locks were closed to marine traffic would impose a crushing burden upon it. Plaintiffs suggest in response that no party should be able to recover such costs whose vessels were not already irrevocably committed to passage through the Locks at the time the accident occurred. The basis of this limitation is that once the nonavailability of the Canal became a foreseeable contingency, all shippers and carriers would be free in the future to protect their interests as best they could. Carriers could intelligently estimate their increased costs when offering their services; and shippers likewise could decide whether alternative modes of transportation should be employed in their businesses during the temporary emergency. It is argued, however, that those parties caught unaware were particularly vulnerable to the harm caused by the defendant's conduct and should be afforded special protection.
 
 
 23
 360 F.Supp. at 1191-92. Judge Cassibry did not decide this question because all the claims allowed by the court grew out of damages suffered by carriers actually traversing the canal at the time the Galaxy Faith struck the Industrial Canal Locks. Nonetheless, the distinction he made would be suitable for distinguishing between many of the claims in the present case where there were ships caught in port as well as ships kept out.
 
 
 24
 Liability for damages growing out of torts must be decided on a case-by-case basis depending on the peculiar facts.[6] But for Kingston, I would remand this case to the district court to determine whether any ships proximately delayed by the negligent obstruction can establish unavoidable losses caused thereby. The court would be guided by established tort principles and not be misguided by the misplaced reliance upon Robins. As it is, Kingston must control here, but should be reconsidered by this circuit en banc.
 
 ON REHEARING AND REHEARING EN BANC
 
 25
 Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRACTICH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.
 
 BY THE COURT:
 
 26
 A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.
 
 
 27
 IT IS ORDERED that the case shall be reheard by this Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.
 
 
 
 [1]
 This distinction finds support in the case of Federal Commerce & Navigation Co. v. Marathonian, 528 F.2d 907 (2d Cir.1975), where the court noted that "[t]he Robins rule appears to be based on a contract theory, denying relief to one injured by negligent interference with contract" and that but for the presence of a contract between the vessel ROLWI and the plaintiff time charterer, who lost profits due to delays incurred after the tortfeasor negligently damaged the ROLWI, "we might question whether at least the damage is not so reasonably to be expected as to justify recovery." Id. at 908 (citing Kinsman); see also Pruitt v. Allied Chemical Corp., 523 F.Supp. 975, 981 (E.D.Va.1981) ("Robins is ... arguably less than dispositive here, because it essentially involved questions of the law of third party contracts not necessarily applicable in the instant case.")
 
 
 [2]
 The panel quoted Louisville and Nashville Railroad Co. v. M/V Bayou Lacombe, 597 F.2d 469 (5th Cir.1980), in which Judge Wisdom wrote:
 Whatever the wisdom of the traditional rule of nonliability for negligent acts causing economic loss, Robins reflects the state of the law in this circuit.
 667 F.2d at 35 (emphasis added).
 
 
 [3]
 33 U.S.C. Secs. 403, 409; Humble Oil Refining Co. v. Tug Crochet, 422 F.2d 602, 608 (5th Cir.1970)
 
 
 [4]
 Ingram Corp. v. Ohio River Co., 505 F.2d 1364 (6th Cir.1974); Gaspar v. United States, 460 F.Supp. 656 (D.Mass.1978); Oil Transport Co. v. The Lunga Point, 182 F.Supp. 357 (D.C.La.1960)
 
 
 [5]
 Union Oil and Lyra Shipping are discussed below. See also National Steel Corp. v. Great Lakes Towing Co., 574 F.2d 339, 343 (6th Cir.1978) ("The boat struck the railroad bridge due to defendant's negligence, causing structural damage. Since transportation across the bridge was a necessary link in National Steel's production process, plaintiff lost production time during the three days required to repair the bridge. While we agree that at some point the link between cause and effect may be 'too tenuous'--that what is claimed to be consequence is only fortuity, that point is not reached in this case."); Pruitt v. Allied Chemical Corp., 523 F.Supp. 975 (E.D.Va.1981) (A chemical company that negligently polluted a bay, killing the fish, was held liable for economic losses suffered by commercial fishermen and local boat, tackle and bait shop owners, but not plaintiffs purchasing and marketing seafood from commercial fishermen, whose losses, while foreseeable, were insufficiently direct.); In re China Union Lines, Ltd., 285 F.Supp. 426 (S.D.Tex.1967) ("Certainly, the UNION RELIANCE [the negligent vessel] owed a duty to all those using or seeking to use the ship channel not to obstruct their passage. Further, it was clearly foreseeable that a negligent collision in the narrow channel would effectively delay all traffic for at least some substantial period of time. When the negligence of the UNION RELIANCE caused the collision, the duty was breached and the foreseeable was made fact. Consequently, such damages as these claimants may prove were incurred because denied normal access to the channel are, in my opinion recoverable."). Id. at 427
 
 
 [6]
 This comports with Judge Kaufman's analysis in Kinsman, where plaintiff was denied recovery for economic losses, not as a matter of law, but rather "under all the circumstances of this case." Petition of Kinsman Transit Authority, 388 F.2d 821, 825 (2d Cir.1968)