**MILLER INDUSTRIES, et al., Plaintiffs-Appellees, Cross-Appellants,**

v.

**CATERPILLAR TRACTOR CO., Defendant-Appellant,**

**Burford Equipment Co., Defendant-Cross-Appellee.**

No. 83–7169.

United States Court of Appeals, Eleventh Circuit.

June 4, 1984.

Rehearing and Rehearing En Banc Denied July 5, 1984.

William H. Hardie, Jr., Mobile, Ala., for Caterpillar.

James W. Garrett, Jr., Robert A. Huffaker, Montgomery, Ala., for Burford.

A. Clay Rankin, Mobile, Ala., for Hendrix, et al.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

This appeal raises several questions concerning the operation of maritime tort law and the proper assessment of damages. Specifically, we must decide: (1) the availability of a negligence remedy where only economic damages are suffered; (2) whether crew members can recover lost wages from a third party because their ship has been disabled; (3) what constitutes a negligent failure to warn; (4) the proper measure of lost profits from a fishing expedition; and (5) whether pre-judgment interest was properly awarded in this case. Several of these questions are of first impression in this circuit, and those courts in other jurisdictions that have considered them have arrived at contradictory conclusions. In light of the uncertainty in the law surrounding these issues, we emphasize that our holding is confined to the facts presented by this case.

## I. Facts and Background

In April 1975, Francis Miller entered into a contract with Bender Welding and Machine Company, Inc. [Bender] to construct a 127 foot vessel named the F/V PRISCILLA ANN. Miller subsequently assigned the contract to a partnership, Hi-Sea Fisheries, whose partners are the plaintiffs Miller Industries, Inc., Joe N. Hendrix Company, Old Feller, Inc. and J & G, Inc.[1] The partnership intended to use the PRISCIL-LA ANN for king crab fishing off the coastal waters of Alaska.

The engine installed on the PRISCILLA ANN was a Caterpillar D–399 marine engine, manufactured by defendant Caterpillar Tractor Company [Caterpillar]. Bender had purchased the engine from defendant Burford Equipment Company [Burford], an authorized Caterpillar distributor and repair facility, on September 25, 1975. Burford had purchased the engine from Caterpillar on August 7, 1975. The engine was not actually delivered by Burford to Bender for installation on the PRISCILLA ANN until April 8, 1976.

Subsequent to the sale of the engine to Bender, but while it was still in Burford's possession, Caterpillar discovered that some of the sun gears in its marine transmissions had not properly hardened and would fail within the first two hundred hours of operation. On January 13, 1976, Caterpillar sent service letters to its dealers warning of this defect and giving directions how to correct it, including a letter to Burford referring by serial number to the engine later installed aboard the PRISCILLA ANN. On February 6, 1976, Caterpillar mailed another service letter to its dealers concerning problems with piston wrist pins in certain specified engines, including the engine that was subsequently installed on the PRISCILLA ANN. The district court found that Burford received both these letters, but had taken no steps to correct the problems or inform the plaintiffs of their existence.[2] The engine was thus installed aboard the vessel in the same condition that it left the Caterpillar factory.

Francis Miller took delivery of the PRISCILLA ANN for the plaintiffs on September 10, 1976, and departed Mobile, Alabama for the Panama Canal. Two days later, near the Yucatan Straits, the PRISCILLA ANN's engine developed vibration problems. Captain Miller reported the problem to Bender, who in turn contacted Burford,

---

1. The remaining plaintiff, John Magoteaux, was a member of the PRISCILLA ANN's crew who intervened on his own behalf.

2. Burford also performed a sea trial on the engine once it was installed aboard the PRISCILLA ANN, but again neglected to inform either Bender or the plaintiffs of the potential problems with the sun gear or piston wrist pins.

and he was advised to proceed at a reduced speed. Consequently, the vessel arrived at the Panama Canal one and one-half days behind schedule and incurred an additional delay of over eight days while the engine was being repaired. The district court found that the engine vibrations were caused by the soft sun gear and that the defendants' combined negligent failure to correct the problem before the boat left Mobile was the proximate cause of the nine and one-half days of delay.

After two more repairs stops,[3] the PRISCILLA ANN finally arrived in Seattle on October 18, 1976. The vessel underwent repairs in Seattle from October 19 through November 1. The district court found that repair work performed during seven and one-half days of that period was directly attributable to the defendants' failure to correct the sun gear and wrist pin problems before the departure from Mobile. After the repairs were completed, the PRISCILLA ANN proceeded to the Bering Sea fishing grounds and began laying out crab pots.

The plaintiffs brought suit against Burford and Caterpillar seeking recovery on theories of negligence, breach of warranty and manufacturer's strict liability. After a non-jury trial, the court determined that both defendants were negligent in failing to notify and inform the plaintiffs of the faulty sun gear and the potential problems with the piston wrist pins.[4] For those seventeen days of delay that the court found attributable to the defendants' combined negligence, it determined that Caterpillar's comparative fault was forty percent and Burford's sixty percent. The court assessed damages for the PRISCILLA ANN's lost fishing time based on the average catches of three other king crab vessels during the period the PRISCILLA ANN was delayed. Because the PRISCILLA ANN's catches compared favorably with the catches of these other vessels after the PRISCILLA ANN began laying

crab pots, the court determined that the PRISCILLA ANN would have performed similarly during her downtime.

The court also awarded damages to John Magoteaux, a crew member of the PRISCILLA ANN who had intervened for his share of the lost catch, and to the shipowners as trustee for the other crew members' share of the lost catch. This award was based on a finding that the crew members' sole compensation for their work, including preparatory work during the summer and early fall and the sailing of the vessel from Mobile to Seattle, was based on a percentage of the gross catch (eight percent for each of the four crew members and seventeen percent for the Captain). The court thus assessed damages for the appropriate percentages of the lost catch due to the PRISCILLA ANN's downtime.

Finally, the court found that no peculiar or unusual circumstances existed to preclude an award of pre-judgment interest. Consequently, the court awarded the plaintiffs pre-judgment interest at a rate of ten percent commencing with January 1, 1977.

Caterpillar on appeal has raised several legal challenges to the court's decision. The plaintiffs have cross-appealed against Burford, arguing that if judgment against Caterpillar is reversed, Burford should be held jointly and severally liable for the full amount of the damages. Burford has not appealed the judgment against it and is a party to this appeal only by virtue of its status as a cross-appellee.

## II. Recovery under Maritime Tort Law

### A. The Shipowners' Claims

Caterpillar first argues that the district court erred in determining that tort law, rather than the law of contracts, governs the shipowners' claims for lost profits. The core of its contention is that tort law does not extend to situations where no physical damage has occurred and the only

---

**3.** The problems leading to these repairs are not at issue on appeal.

**4.** Because the district court found that the defendants were negligent, it did not reach the plaintiffs' claims of breach of warranty and strict liability.

damages claimed are for economic loss due to a product's failure to perform as expected. The defendant argues that in such a setting recovery is limited to those remedies provided by warranty, and here the warranty limited recovery to repair costs.

■ Caterpillar is correct that, as a general rule, courts have denied recovery for negligence where no physical damage has occurred. *See* Prosser, Law of Torts § 101, p. 665 (4th ed. 1971) and authorities cited therein. In the products liability context where privity exists between the plaintiff-buyer and defendant-seller, the rule's primary purpose is to preserve the operation of warranties where the plaintiff's claim is loss of bargain. Prosser, *id.* at 666–67; *cf. Union Oil Co. v. Oppen*, 501 F.2d 558, 564–65 (9th Cir.1974); *Jig the Third Company v. Puritan Marine Insurance Underwriters Corporation*, 519 F.2d 171, 179, 181 (5th Cir.1975), (Gee, J., dissenting) *cert. denied*, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976). Those courts adhering to the general rule thus view the disappointment of commercial expectations as a matter properly left to the law of sales governing the negotiations and agreements of the parties. This approach also has led to the denial of recovery where the only physical damage is to the product itself. *See Jig the Third*, 519 F.2d at 180–81 (Gee, J., dissenting).

This circuit has rejected, at least in the maritime context, such a rigid separation of the law of sales and the law of torts. In *Jig the Third*, the former Fifth Circuit[5] held that unless a warranty expressly disclaims liability for negligence, the plaintiff may recover his damages although the only physical damage is to the product itself:

We do not read the Uniform Commercial Code as a categorical imperative exiling or outlawing the law of negligence between contracting parties. While there may be no magic words which are necessary to grant absolution for negligence, we have in this contract no plausible syllabization for such grace .... Limiting contractual language and limitless liability predicated upon negligence can coexist in situations such as this one, and this duality can only be foresworn by language which will bear no interpretation other than that the seller shall not be held responsible for his own negligent wrongdoing.

519 F.2d at 178–79. The majority thus concluded that although a warranty may preclude recovery for negligence, such a preclusion must clearly be made a part of the bargain.

Relying on *Jig the Third*, the district court here allowed recovery for negligence because "[t]here is nothing in Caterpillar's warning that can be fairly construed as exempting it from liability for negligence." The defendant argues, however, that the district court's reliance on *Jig the Third* was misplaced because in that case physical damage had occurred, albeit only to the product itself.[6]

We find the defendant's proposed distinction unpersuasive. First, as noted above, the rationale for the rule not allowing recovery where only pecuniary loss is claimed is fundamentally the same for not allowing recovery where only the product is damaged: the performance of the product—whether it explodes or fails to function—is conceptualized as part of the bargain and thus properly covered by the law of sales.

---

5. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

6. The plaintiffs contend that there was physical damage here, because when the sun gear failed it apparently caused a crack in the engine. The term "physical damage" in this context, however, is a term of art contemplating an accident "involving some violence or collision with external objects." Note, Economic Loss and Products Liability Jurisprudence, 66 Columbia Law Review 917, 918. *See also, James v. Bell Helicopter Company*, 715 F.2d 166, 170–74 (11th Cir.1983). The damage occasioned by the faulty sun gear thus would not qualify as "physical damage" as that term is generally used in the products liability context.

The court in *Jig the Third*, however, explicitly rejected this approach.[7]

■ Second, the argument for finding that a warranty was not intended to preclude a negligence action is even more compelling here than in *Jig the Third*. In *Jig the Third*, the plaintiff's claim was premised on the negligent design and manufacturing of the product and thus was closely related to the quality of the product and the plaintiff's expectations of how the product would perform. Here, however, the gravamen of the plaintiffs' complaint is that the defendant failed to properly warn of defects that it discovered after the engine was already on the market. Whatever the merits of adopting a rule that views defects in a product as part of the parties' bargain and thus within the law of sales, it is much less tenable to presume that the buyer has bargained away the manufacturer's obligation to warn of defects that later come to the manufacturer's attention. A duty to warn of a product's defects of which the seller becomes aware goes not to the quality of the product that the buyer expects from the bargain, but to the type of conduct which tort law governs as a matter of social and public policy. *See* Prosser, § 92, p. 613; *Jig the Third*, 519 F.2d at 179, 181 (Gee, J., dissenting). To hold otherwise would impermissibly allow a manufacturer who is aware that it has a defective product on the market to hide behind its warranty while the buyer unknowingly uses it.

■ We thus conclude that the district court did not err in finding that a negligent failure to warn of a defect, at least where the manufacturer is aware of the defect and the warranty does not expressly disclaim negligence, forms a basis for a negligence action under maritime tort law[8] even though no physical damage has occurred.

### B. The Crew Members' Claims

Caterpillar also contends that the general rule barring recovery solely for economic loss precludes the crew members from recovering their share of the lost catch. The rule in this context, where no contractual relationship between the plaintiff and the defendant exists, focuses not on the applicability of the law of sales or tort law, but on concerns that the defendant will be liable for remote or speculative damages. *Union Oil Company v. Oppen*, 501 F.2d at 563. The rule also has been justified based on the doctrine of proximate cause. *Id.*

The defendant again has correctly stated the general rule. The Supreme Court in *Robins Drydock & Repair Company v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), held that "as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong." 275 U.S. at 309, 48 S.Ct. at 135. Although this circuit has questioned the rule's wisdom, we nonetheless have abided by it. *Louisville & Nashville Railroad Company v. M/V BYULACOMBE*, 597 F.2d 469, 472 (5th Cir.1979) ("Whatever the wisdom of the traditional rule of non-liability for negligent acts causing economic loss, *Robins* reflects the state of law in this circuit"). *See also Kingston Shipping Co., Inc. v. Roberts*, 667 F.2d 34 (11th Cir.1982); *Hercules Carriers, Inc. v. State*

---

**7.** Moreover, the damage that resulted in *Jig the Third* was not occasioned by an accident with an external object but was due to faulty design and manufacturing. Such damage, therefore, might more properly be defined as "economic loss" rather than "physical damage." *See supra* n. 6; *James*, 715 F.2d at 170–73. *But see Moorman Manufacturing Co. v. National Truck Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) (Illinois law recognizes "physical damage" where product defect posed "sudden and dangerous occurrence;" in *Jig the Third*, the product (the ship itself) sunk and thus might

qualify as "physical damage" under Illinois law because of the dangers engendered by such an occurrence); *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor*, 652 F.2d 1165 (3d Cir.1981).

**8.** The defendant does not dispute the lower court's finding that this action is governed by maritime law. Rather, it simply argues that the general rule barring recovery solely for pecuniary losses should govern in the maritime context as well.

*of Florida,* 720 F.2d 1201 (11th Cir.1983) (Clark, J., concurring), district court judgment affirmed by operation of law because of equally divided en banc court, 728 F.2d 1359 (11th Cir.1984).

Despite the general rule announced in *Robins Drydock,* the district court found that the crew members of the PRISCILLA ANN were entitled to recover their lost share of the catch due to the vessel's delay. In so concluding, the court relied on a line of Ninth Circuit cases holding that the rationale of *Robins Drydock* does not preclude recovery of lost profits by fishing vessel owners and commercial fishermen. *See Jones v. Bender Welding & Machine Works, Inc.,* 581 F.2d 1331, 1337 (9th Cir. 1978); *Union Oil Co. v. Oppen,* 501 F.2d at 567; *Carbone v. Ursich,* 209 F.2d 178, 181–82 (9th Cir.1953); *see also Reefer Queen Co., Inc. v. Maritime Construction & Design,* 73 Wash.2d 774, 440 P.2d 448 (1969). This circuit has yet to address the issue,[9] and we approach its resolution cognizant that not all courts have embraced the Ninth Circuit's view. *See Henderson v. Arundel Corp.,* 262 F.Supp. 152 (D.Md. 1966), *aff'd* 384 F.2d 998 (4th Cir.1967); *Casado v. Schooner Pilgrim, Inc.,* 171 F.Supp. 78 (D.Mass.1959).

In *Carbone v. Ursich, supra,* the Ninth Circuit overruled a prior case denying crew members a right to recover for their lost share due to a third party's negligence disabling the vessel. The court based its upholding of the fishermen's claims on several grounds. First, the court noted that *Robins Drydock* was decided against a background of case law which had upheld the fishermen's right to recover against third parties; yet, the Court in *Robins Drydock* did not indicate that it intended to overrule these prior cases. Second, the court found that the reasoning of *Robins Drydock* in disallowing recovery by a time charterer of the injured vessel did not apply to the "special situation" involved with fishermen dependent upon the vessel's catch for their wages:

> It is quite evident that the [*Robins Drydock*] court, although dealing with a well-established rule of law of torts, was not thinking of this special situation of the fishermen who, as we have here indicated, had long been recognized as beneficiaries under a special rule which made the wrongdoer liable not only for the damage done to the fishing vessel, but liable for the losses of the fishermen as well. This long recognized rule is no doubt a manifestation of the familiar principle that seamen are the favorites of admiralty and their economic interests entitled to the fullest possible legal protection. These considerations have given rise to a special right comparable to that of a master to sue for the loss of services of a servant, or the right of a husband or father to sue for the loss of services of wife or child.
>
> . . . . .
>
> ... [F]ailure to [so hold] would mean a withholding from fishermen of all redress for tortious interference with the progress of the voyages which are their livelihood.

209 F.2d at 182, 183. The Ninth Circuit's later discussion in *Oppen, supra,* makes evident that the *Carbone* court's "exception" to the general rule of non-recovery against third party tort-feasors for economic loss is only one of a number of exceptions and qualifications to the general rule that has developed in both maritime and non-maritime settings. 501 F.2d at 567.

Those courts refusing to follow *Carbone* have done so primarily on the basis that the traditional favored status of seamen at law does not by itself justify the creation of a special rule: "I do not believe that to say 'seamen are the favorites of admiralty' should be to create a corresponding class of villains on whom to impose a new type of liability." *Casado,* 171 F.Supp. at 80. Those cases also point to the inapplicability

---

**9.** In *State of Louisiana ex rel. Guste v. M/V TESTBANK,* 524 F.Supp. 1170 (E.D.La.1981), *aff'd.,* 728 F.2d 748 (5th Cir.1984), the district court found that commercial fishermen were entitled to recover for economic loss caused by PCP contamination of their fishing grounds.

of several cases relied on in the *Carbone* decision,[10] and the danger that such a rule could impose burdensome liability if, for example, the ship was sunk instead of merely delayed. *Id.*, 171 F.Supp. at 180.

Although the criticisms of *Carbone* are not insubstantial, we agree with the Ninth Circuit's reasoning to the extent that it would uphold an award of damages to the PRISCILLA ANN's crew members. We so hold for several reasons. First, the lost catch due to the delay was not merely prospective compensation, as the crew members had been working since the summer to prepare for the fishing voyage and their compensation for this work was to come solely out of their shares of the catch. Second, it would be anomalous to hold in this setting that the shipowners have a right to recover their lost share of the catch as damages,[11] but the crew's wages as a share of that very same lost catch are beyond the scope of recovery. From this perspective, it becomes evident that the crew's lost share is neither remote nor a speculative injury resulting from the defendant's tortious actions, and the purpose of the general rule denying recovery—limiting recovery to foreseeable damages—thus would not be furthered by applying it. It is in this context that we read the "special situation" language of *Carbone:* not only are seamen and fishermen favorites of the law, but where the fishermen's wages are dependent on the vessel's catch and that vessel is tortiously incapacitated, their losses are as foreseeable and direct a consequence of the tort-feasor's actions as the shipowner's loss of use. Hence, they are unlike the time charterer in *Robins Drydock* whose contract with the shipowner is

impaired "unknown to the doer of the wrong," 275 U.S. at 309, 48 S.Ct. at 135, but suffer the same injury as the shipowner who loses the profits from the catch. Finally, while several of the cases relied on by the *Carbone* court are not directly on point, they do lend support to its conclusion that fishermen crew members can recover against a third party tort-feasor whose actions disable the vessel. *See Carbone*, 209 F.2d at 179–81; *Oppen*, 501 F.2d at 567.

We thus conclude that the district court did not err in finding that the crew members, through the shipowners as trustee,[12] and crew member Magoteaux as an intervening party, could recover for their lost share of the catch.

### III. The Adequacy of Caterpillar's Warnings

Having found that the shipowners and crew have a legally redressable claim, we must next address Caterpillar's contention that the service letters sent to its dealers were adequate to satisfy its duty to warn. Caterpillar concedes that we must find the district court's finding that Caterpillar was negligent in its warnings to be "clearly erroneous" in order to reverse. Fed.R. Civ.P. 52(a).

We agree with the district court that the dangers created by the faulty sun gear and piston wrist pins to the engine, vessel and crew were of a significant magnitude to give rise to a duty to warn. *See, Jones*, 519 F.2d at 1335; *Todd Shipyards Corp. v. Turbine Service, Inc.*, 467 F.Supp. 1257, 1286–87 (E.D.La.1978); Schwartz, *The Post-Sale Duty to Warn: Two Unfor-*

---

**10.** The *Henderson* court pointed to two cases in particular relied on in *Carbone* that it viewed as inapposite. It found *Taber v. Jenny*, 23 F. 605 (D.C.Mass.1856), to be inapplicable because that case involved intentional interference with the vessel's catch, and *United States v. Laflin*, 24 F.2d 683 (9th Cir.1928) to be inapposite because the case was governed by a statute creating the cause of action. *Henderson*, 262 F.Supp. at 160.

**11.** *See supra* Part IIA.

**12.** Caterpillar also argues for the first time on appeal that permitting the shipowners to recov-

er as a trustee violates Fed.R.Civ.P. 17(a), which requires that actions be "prosecuted in the name of the real party at interest." Because the defendant's objection does not question this court's subject matter jurisdiction, we find that the defendant's failure to raise the objection at the trial level resulted in its waiver. *See Chicago & Northwestern Transportation Company v. Negus-Sweenie, Inc.*, 549 F.2d 47, 50 (8th Cir. 1977); 6 Wright & Miller, Federal Practice and Procedure, § 1554 at 701.

*tunate Forks in the Road to a Reasonable Doctrine,* 58 N.Y.U.L.Rev. 892, 895 (1983). Caterpillar thus had a duty to undertake reasonable efforts to warn of the defects.

Caterpillar does not dispute that it had a duty to warn, but contends that it discharged this duty when it sent the service letters to Burford identifying the problem and describing the corrective actions needed to be taken. Caterpillar places special emphasis on the fact that Burford was still in possession of the engine at the time the service letters were received.

■ The district court found that the service letters to Burford did not satisfy Caterpillar's duty to warn because it was foreseeable that Burford would not take corrective measures;[13] the court found, therefore, that Caterpillar's duty to warn of the problems extended beyond the mere sending of a letter to its dealer. We agree with the district court that, on the facts presented, the warning was inadequate.

What constitutes a reasonable warning depends on the facts of the case, including the likelihood and gravity of the potential harm. Schwartz, 58 N.Y.U.L.Rev. at 896. Here, the district court found that Caterpillar knew that the sun gear would fail within the first two hundred hours of operation and thus would pose a danger that the vessel would become disabled at sea. The likelihood and gravity of the harm was therefore great and required a commensurate amount of effort on Caterpillar's part to warn of the imminent problems. *Butler v. Sonneborn Sons, Inc.,* 296 F.2d 623 (2d Cir.1961); *cf. Todd Shipyards,* 467 F.Supp. at 1286–87. Likewise, Caterpillar was aware that the piston wrist pins were in need of attention and had a corresponding duty to implement an effective warning.

■ Although Caterpillar relies heavily on the fact that Burford was in possession of the engine, we find that this circumstance actually works against Caterpillar's position. As Caterpillar's brief points out, because Burford was an authorized Caterpillar dealer and repair facility, Caterpillar engaged in extensive schooling and supervision of Burford's operation. According to the testimony of one of Caterpillar's regional managers, Caterpillar's local service representatives had a "strong responsibility to make sure the local dealer is executing all of the things we want them to execute." The adequacy of Caterpillar's warning thus must be judged within the context of its relationship with Burford as an authorized dealer and its enhanced ability to ensure that the warnings were received and acted upon by Burford. *Cf. Bell Helicopter Company v. Bradshaw,* 594 S.W.2d 519 (Tex.Civ.App.1979).

■ When all these factors are considered together, it becomes evident that the district court properly concluded that Caterpillar did not satisfy its duty to warn. Caterpillar knew that the sun gear would fail and that a great danger would be posed to the vessel and crew. Furthermore, because the engine was in its dealer's possession, Caterpillar easily could have followed up its service letter with further communication to ensure that the warning was received and that the dealer realized it was imperative that the defects be corrected.[14]

---

**13.** The district court's finding that Burford's failure to correct the defect was foreseeable bore upon both the adequacy of Caterpillar's warning and whether Burford's intervening negligence in failing to correct the defect precluded a finding that Caterpillar's negligence was the proximate cause of the plaintiffs' losses. Caterpillar's brief indirectly argues that proximate cause did not exist, because, even if its warnings had been adequate, the same delays causing the plaintiffs' losses would have occurred in fixing the problems prior to the voyage. Caterpillar's argument, however, ignores the fact that part of the delay was caused by Captain Miller's reduced speed once the engine began vibrating due to the faulty sun gear, and that the sun gear and piston wrist pin problems were identified well in advance of the engine's installation, allowing ample time for their correction without causing any delay. A proper warning, therefore, would have prevented the delays, and we thus agree with the district court that Caterpillar's negligent failure to warn was a proximate cause of the plaintiffs' losses.

**14.** We do not go so far as to hold that Caterpillar had a duty to actually correct the problem, *see* Schwartz, 58 N.Y.U.L.Rev. 899–901, but only conclude that a service letter to a dealer under these facts was inadequate given the likelihood

Under these circumstances, we agree with the district court that a single form letter to its dealers concerning each defect did not constitute a reasonable effort to warn that a potentially dangerous engine was in need of repair before installation aboard a seagoing vessel.

Finally, we note that the Ninth Circuit came to a similar conclusion under analogous facts in *Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Company*, 565 F.2d 1129 (9th Cir.1977). The *Pan-Alaska* court held that "merely sending a single warning note to its dealer" of defective fuel filters did not insulate the manufacturer from liability where the defect posed a significant danger. Although *Pan Alaska* was decided under strict liability principles, we find that its underlying rationale—that the adequacy of a warning must be judged against the created dangers—to be persuasive here in concluding that Caterpillar's service letter did not fulfill its duty to warn or inform of the potential dangers.

## IV. Recovery of Prospective Lost Profits

The defendant next argues that the lost profits due to the vessel's delay were too speculative to allow recovery because the PRISCILLA ANN was a new enterprise with no proven track record. The defendant also contends that because the success of a fishing venture is dependent upon uncontrollable factors, such as weather, determination of a lost catch is necessarily speculative.

 The district court properly required the plaintiffs to prove their loss "with reasonable certainty" before allowing recovery. *See Delta Marine Drilling Co. v. M/V BAROID RANGER*, 454 F.2d 128 (5th Cir.1972). The plaintiffs fulfilled their burden through evidence showing the catches of three other fishing vessels during the PRISCILLA ANN's downtime. The appropriateness of the other vessels' catches for comparison was demonstrated by the PRISCILLA ANN's comparable average daily catches during the period all four vessels were fishing; indeed, during that time the PRISCILLA ANN's average catch was higher than two of the other three ships. Based on this evidence, we agree with the district court that the plaintiffs met their burden of proving their lost catch to a "reasonable certainty," as the comparison vessels were subject to the same factors, such as inclement weather, that would have affected the PRISCILLA ANN had it been able to fish. Nor do we find, in light of the PRISCILLA ANN's comparable performance once it began fishing, that the fact that this was the PRISCILLA ANN's maiden fishing voyage renders a determination of damages too speculative.[15]

## V. Pre-Judgment Interest

 In admiralty, pre-judgment interest generally should be awarded unless certain "peculiar circumstances" are present. *Dow Chemical Co. v. M/V GULF SEAS*, 593 F.2d 613, 614 (5th Cir.1979). The decision of whether to award pre-judgment interest is left to the trial court's discretion. *Id.* Here, the district court found that no "peculiar circumstances" existed and awarded the plaintiffs pre-judgment interest.

 Caterpillar advances several reasons why it believes this award was an abuse of discretion. First, it contends that pre-judgment interest is intended to compensate a plaintiff for the loss of use of its

of the engine's failure and the gravity of the harm it posed.

**15.** The three cases that the defendant cites in support of the general rule that new ventures cannot recover lost profits do not persuade us otherwise. Two of the cases, *McBrayer v. Teckla, Inc.*, 496 F.2d 122 (5th Cir.1974), and *Norris v. Bovina Feeders, Inc.*, 492 F.2d 502 (5th Cir.1974), were decided on the basis of Texas law.

The court in the other case, *Paul O'Leary Lumber Corp. v. Mill Equipment, Inc.*, 448 F.2d 536 (5th Cir.1971), stated that such a general rule exists, but seemed more influenced by the fact that the plaintiffs there had produced scant evidence to establish their losses. *Id.* at 538. Moreover, the defendants have failed to cite any authority that such a general rule governs the award of damages in an admiralty case.

property, which the general damages award here already accomplished, and awarding pre-judgment interest would thus compensate the plaintiff twice for the same injury. Caterpillar, however, misunderstands the purpose of awarding pre-judgment interest. Interest is awarded not as a penalty or as compensation for loss of property use, but as compensation for the use of funds to which the plaintiff was ultimately judged entitled, but which the defendant had the use of prior to judgment. *Socony Mobile Oil Co. v. Texas Coastal & International, Inc.*, 559 F.2d 1008, 1014 (5th Cir.1977). The award of pre-judgment interest here thus does not twice compensate the plaintiffs for their injury.

The defendant next argues that because of the complexity of the issues involved and the presence of a genuine dispute over liability, "peculiar circumstances" were present in this case justifying a denial of pre-judgment interest. Although the presence of a genuine and serious dispute is a factor for the court to consider in exercising its discretion, *Nat G. Harrison Overseas Corp. v. American Tug TITAN*, 516 F.2d 89 (5th Cir.1975), it does not alone mandate a finding of abuse of discretion. *Dow Chemical Co. v. M/V GULF SEAS*, 593 F.2d at 614. Moreover, this is not a case where the parties were mutually at fault, *id.*, or where the plaintiffs were responsible for any delay in bringing the case to trial, *see Socony Mobil*, 559 F.2d at 1014. Under these circumstances, we conclude that the district court did not abuse its discretion in awarding the plaintiffs pre-judgment interest.

VI. Conclusion

Because we find that the district court properly held Caterpillar liable, we need not reach the plaintiff's contention on its cross-appeal that Burford should be held jointly and severally liable. For the foregoing reasons, the district court's judgment is AFFIRMED.