593 F.Supp. 400 (1984)
CONTICARRIERS & TERMINALS, INC., Plaintiff,
v.
BORG-WARNER CORP., et al., Defendants.
No. 83-2021A(1).
United States District Court, E.D. Missouri.
October 3, 1984.
*401 Gary T. Sacks, St. Louis, Mo., for plaintiff.
Donald L. James, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff, ContiCarriers & Terminals, Inc. brought this action against Borg-Warner Corporation and Bates Sales Company, based on admiralty jurisdiction, for negligent breach of contract.
This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.

A. FINDINGS OF FACT
1. At all material times, plaintiff ContiCarriers & Terminals, Inc. (ContiCarriers) was a corporation duly organized and existing under law.
2. At all material times, defendant Borg-Warner Corporation (Borg-Warner) was a corporation duly organized and existing under law.
3. At all material times, Bates Sales Company (Bates) was a corporation duly organized and existing under law.
4. ContiCarriers was the operator and owner pro hac vice of the M/V CONTI AFTON, which is a river towboat used to transport barges on the rivers of the United States.
5. Borg-Warner manufactured and sold rubber-lined water lubricated bearings. Bates Sales was a distributor of the Borg-Warner marine bearings.
6. On July 2, 1982, ContiCarriers ordered four bearings from Borg-Warner through Bates Sales. The bearings were ordered for installation on the M/V CONTI AFTON.
*402 7. Bearings are used to support the starboard and port shafts that turn the propellers in marine vessels. They are brass cylinders lined with rubber. Bearings are installed in housings. Typically, the outer diameter of the bearing is slightly larger than the inner diameter of the housing. This prevents the bearing from rotating in or becoming dislodged from the housing. The disparity in diameters is known as interference fit.
8. There are two methods of installing bearings with interference fit. The first is by chilling the bearings. This method shrinks the bearings that they may slide into their housings. Shrinkage can be achieved by placing the bearings in either ice or dry ice. The second method of installation entails the use of force to press the bearings into their housings.
9. ContiCarriers employed National Marine Services to install the Borg-Warner bearings in the M/V CONTI AFTON. ContiCarriers specifically instructed National Marine to chill the bearings with dry ice. National Marine is a reputable shipyard, and it conformed to ContiCarriers' instructions regarding the bearing installation. Nor was anything unusual observed about the actual installation of the bearings on the M/V CONTI AFTON.
10. The use of dry ice is a fairly common means of installing marine bearings. A number of shipyards use this method, including National Marine.
11. Shortly after the bearings were installed, the rubber portion on them cracked and separated from the brass. These defects rendered the bearing unusable.
12. ContiCarriers immediately notified Borg-Warner of the defect, and Borg-Warner authorized the removal of the bearings from the M/V CONTI AFTON. Borg-Warner agreed to send a replacement set of bearings to National Marine for use on the M/V CONTI AFTON. ContiCarriers never paid Bates Sales or Borg-Warner for these replacements.
13. The damage to the Borg-Warner bearings was caused by the use of dry ice in the installation process. The rubber linings were subject to such low temperatures that they became embrittled.
14. Prior to this incident involving the M/V CONTI AFTON, at least two Borg-Warner employees were aware of the potential for bearing failure with dry ice installation. Defendants knew or should have known that the use of dry ice in connection with the installation of marine bearings could cause the rubber to crack.
15. Prior to the damage to the bearings in question, Borg-Warner did not instruct National Marine or ContiCarriers against the use of dry ice. Nor did Borg-Warner warn of the dangers of bearing installation with dry ice.
16. At all relevant times, Borg-Warner had two competitors which manufactured marine bearings. The catalogues of both competitors instructed their customers not to use dry ice when installing the bearings.
17. The M/V CONTI AFTON was out of commission for fourteen days because of the bearing failure. ContiCarriers was required to pay charter hire at the rate of $687.00 per day, or $9,618.00 during this fourteen day period. ContiCarriers would have recouped the $9,618.00 figure had the M/V CONTI AFTON been in commission for the fourteen days.
18. ContiCarriers also sustained damages in the amount of $1,358.60 for surveyor's expenses and $12,075.26 in repair costs as a result of the bearing failure.

B. CONCLUSIONS OF LAW
This Court had jurisdiction of this case pursuant to 28 U.S.C. § 1333, which is admiralty jurisdiction. A claim alleging negligence on the part of a manufacturer or distributor of a part of a vessel sounds in admiralty. Jig The Third Corp. v. Puritan Marine Insurance Underwriters Corp., 519 F.2d 171 (5th Cir.1975). Thus, the proper substantive law to be applied is federal maritime law. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).
*403 Plaintiff ContiCarriers asserts that the defendants Borg-Warner and Bates Sales are liable to it for all losses sustained as a result of bearing failure on the M/V CONTI AFTON. Plaintiff asks for relief for both breach of contract and negligence. Because this Court concludes that defendants were negligent in their failure to warn ContiCarriers against the use of dry ice, it is unnecessary to determine whether defendants breached their contract as well.
ContiCarriers first argues that defendants were negligent in their failure to instruct customers against the use of dry ice. This Court agrees. Manufacturers and suppliers of maritime products retain a duty to notify customers of the proper manner of handling those products. Miller Industries v. Caterpillar Tractor Co., 733 F.2d 813, 820-21 (11th Cir.1984); Jones v. Bender Welding & Machine Works, Inc., 581 F.2d 1331 (9th Cir.1978); Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co., 565 F.2d 1129, 1136 (9th Cir.1977). In Emerson G.M. Diesel v. Alaskan Enterprise, 732 F.2d 1468, 1475 (9th Cir.1984), for example, the manufacturer of shipping vessel components was found negligent of failing to specifically instruct its customers to install temperature-sensing devices. That defendants knew or should have known that the exposure of marine bearings to dry ice creates a danger of cracked rubber, and that dry ice was commonly used to install marine bearings, defendants should have included warnings against such use in the materials supplied to ContiCarriers. Borg-Warner's competitors included such a warning in their catalogues, and it would have been feasible for defendants to have done the same. This Court accordingly finds that defendants breached their duty to warn ContiCarriers about the dangers of dry ice, and that failure to warn was the proximate cause of the damage to the bearings in question.
Bates Sales filed a counterclaim against ContiCarriers for the cost of the replacement bearings. Bates Sales is not entitled to recover on this counterclaim because of its fault for the defects in the original bearings.
ContiCarriers is entitled to full compensation for the losses it sustained as a result of the damaged bearings. Thus, ContiCarriers may recover the amount it expended due to the failure of the first set of bearings, including the cost of surveying the damages. Clary Towing Co., Inc. v. Port Arthur Towing Co., 367 F.Supp. 6, 12 (E.D.Tex.1973).
In addition, in admiralty, parties are entitled to recover damages for economic loss. Miller Industries v. Caterpillar Tractor Co., 733 F.2d at 822; Emerson G.M. Diesel v. Alaskan Enterprise, 732 F.2d at 1472. Therefore, because ContiCarriers has established with reasonable certainty that it would have recovered the cost of the M/V CONTI AFTON's charter hire had the vessel been in commission for the fourteen additional days that it was not, ContiCarriers is entitled to recover $9,618.00 in economic losses.
Finally, ContiCarriers is entitled to prejudgment interest. In admiralty, prejudgment interest should routinely be awarded in the absence of `peculiar circumstances'. Miller Industries v. Caterpillar Tractor Co., 733 F.2d at 822; Mid-America Transportation Co., Inc. v. Rose Barge Lines, Inc., 477 F.2d 914, 916 (8th Cir. 1973). This Court, therefore, awards prejudgment interest, as well.