**INGRAM RIVER EQUIPMENT, INC., Appellee,**

v.

**POTT INDUSTRIES, INC., Appellant.**

**INGRAM RIVER EQUIPMENT, INC., Appellant,**

v.

**POTT INDUSTRIES, INC., Appellee.**

Nos. 84–1371, 84–1424.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1984.

Decided March 5, 1985.

Rehearing and Rehearing En Banc Denied April 9, 1985.

W. Stanley Walch, St. Louis, Mo., for appellant.

Elmer Price, St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

This case involves claims for damages stemming from the allegedly defective design and construction of heating-coil systems that the defendant Pott Industries, Inc. (Pott), installed in four barges it built for the plaintiff Ingram River Equipment, Inc. (Ingram). The District Court[1] found Pott negligent under federal maritime law and liable for breach of warranty under Mo.Ann.Stat. § 400.2–315 (Vernon 1959). It awarded damages of $361,757.00 to Ingram for costs of repair and replacement of the steam-coil systems, plus prejudgment interest of 9% per annum, but denied damages for loss of the use of the barges during the period that they were out of service. We affirm.

I.

In 1973, Ingram contracted with Pott to buy four barges which contained steam-coil systems for heating heavy liquid cargo. (Heavy oil is easier to unload when heated.) Pott, the builder, submitted plans and drawings of the steam-coil systems to Ingram for its approval. Ingram gave its approval, and Pott installed the steam-coil

---

1. The Hon. H. Kenneth Wangelin, Senior United States District Judge for the Eastern District of Missouri. The District Court's opinion is reported at 573 F.Supp. 896 (E.D.Mo.1983) appeal dismissed 732 F.2d 160.

systems using furnace-weld pipe as provided in the plans. In August, 1977, Ingram discovered numerous leaks in the steam coils of one of the barges, and, subsequently, in the other three barges. The parties agree that these leaks were most likely caused by freezing water that remained in the coils after steaming.

Ingram had the leaking coils repaired, but following the initial repairs continued to have problems with steam leakage, and decided to replace the entire coil systems in all four barges. Ingram replaced the coil systems with new systems that differed in two significant respects. First, the new systems used seamless pipe, which is stronger than the furnace-weld pipe used in the original systems. Second, the new systems incorporated design changes in coil placement to facilitate removal of condensed water. When Pott refused to pay for the replacement, Ingram brought suit claiming that Pott was negligent and had breached its warranty of fitness by using coil piping that was too weak and by failing to provide an adequate method of draining water left in the pipes.

The District Court held the defendant liable for negligence under federal maritime law and for breach of warranty under Mo.Ann.Stat. § 400.2–315 (Vernon 1959). It found that the systems were inadequately designed to purge condensed water out of the coils after they were filled with steam and that the furnace-weld pipe was inadequate to perform its function. It awarded Ingram damages for the repair and replacement of the coils but denied recovery for loss of use of the barges. Pott appeals, claiming, among other things, that the District Court did not have maritime jurisdiction over the negligence claim, and that even if the case sounds in admiralty, federal admiralty law does not allow recovery for economic losses. Ingram cross-appeals from the District Court's denial of damages for loss of use.

## II.

The District Court based its finding of maritime jurisdiction under 28 U.S.C. § 1333 (1982) on the two-factor test set forth by the Supreme Court in *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). This test provides that maritime tort jurisdiction exists if the wrong occurred on navigable waters and if the wrong bore a significant relationship to maritime activity. *Id.* at 268, 93 S.Ct. at 504.

█ In this case there is no dispute that the wrong or its result—the ruptured coils—has a marine locality, since the splits in the coils occurred after the barges had been launched. The dispute, rather, centers around whether the wrong bears a significant relation to maritime activity. We believe that it does. Maritime activity has traditionally been viewed as encompassing "maritime service, commerce, or navigation." See, *e.g., Executive Jet,* 409 U.S. at 251, 258, 259, 272, 93 S.Ct. at 496, 499, 500, 506. Here the splits in the coils directly affected the barges' use in maritime commerce. Without functioning heating-coil systems, the barges could not be used effectively to haul heavy petroleum products that require heating before unloading.

Pott contends that the purpose of maritime jurisdiction—to provide special maritime-law expertise—is not promoted by invoking maritime jurisdiction in this case. It argues that since Ingram's claim turns on the adequacy of the materials and design of the steam-coil systems, there is no claim requiring the special guidance of admiralty, such as a claim of unseaworthiness, cargo damage, or maritime lien.

The short answer to this argument is that the scope of admiralty jurisdiction is not determined by whether or not a particular case calls for admiralty "expertise." Rather, the Supreme Court in *Executive Jet* fashioned a broader test that for reasons of convenience only indirectly addressed the need for admiralty expertise. It does so by requiring that the alleged wrong bear a significant relationship to maritime activity.

Further, this case does involve the expertise of admiralty courts in some respects. Testimony as to defects in the design of ships and internal components, *e.g.*, a barge heating-coil system, may in many cases be best evaluated by a court which is familiar, or more likely to be familiar, with maritime cases. In this particular case, in addition to determining whether the heating-coil systems were defective in causing the pipes to split, the court had to determine whether the split pipes made the barges unusable for the purpose of hauling certain cargoes. This determination presumably is best made by a court which is, at least theoretically, more likely to be familiar with maritime conditions.

### III.

Pott argues that the repair and replacement of the coils constitutes an "economic loss," and that the common-law doctrine denying tort recovery for economic losses should be applied in admiralty to deny recovery for this damage. This doctrine is part of the common law of Missouri.

The concept of "economic loss" has been given various definitions, but in the present context, it is perhaps best understood, in view of the rationale of the economic-loss doctrine, as referring to damages which do not result from a dangerous or unsafe condition of a product. See, *e.g.*, *Seely v. White Motor Co.*, 63 Cal.2d 9, 18, 45 Cal. Rptr. 17, 23, 403 P.2d 145, 151 (1965) (Traynor, J.); *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo.1978) (en banc) (damage to property sold is an "economic loss" unless that damage was caused by a violent occurrence).[2] Typically, economic losses are the costs of repairing or replacing a product and the loss of profits from the use of the product.

The traditional rationale for denying recovery of economic losses is to protect manufacturers from "unlimited and unknown" liability for products that simply fail to perform as anticipated without posing a safety risk. *Seely*, 63 Cal.2d at 17, 45 Cal.Rptr. at 22–23, 403 P.2d at 150–51. It is argued that the buyer or consumer of a safe product can adequately protect his interest in quality performance through the law of warranty, and that given the possible extent of liability for economic losses, it would be unfair to impose such liability on the manufacturer.

Assuming the damage to the coils here is an "economic loss" because it did not occur in a manner dangerous to people or have dangerous consequences, the question thus arises whether admiralty law recognizes the doctrine of economic loss in negligence cases. We have not yet addressed this particular issue,[3] but most of the other circuits which have addressed it have concluded that the economic-loss doctrine does not apply to bar recovery for maritime negligence.

In *Emerson v. G.M. Diesel, Inc., v. Alaskan Enterprise*, 732 F.2d 1468 (9th Cir. 1984), the court acknowledged that in non-admiralty suits economic losses could not be recovered but then stated: "The rule in admiralty is different. Recovery of economic losses is permitted against a manufacturer of defective goods when liability is based on negligence." *Id.* at 1472 (citation omitted). It stated that the rationale for this rule was that "'seamen are favorites of admiralty and their economic interests [are] entitled to the fullest possible legal protection.'" *Id.*, quoting *Carbone v. Ursich*, 209 F.2d 178, 182 (9th Cir.1953). The court also rejected the economic-loss doctrine on substantive grounds. It questioned the assumption that the recovery of

---

**2.** For discussion of the various definitions of "economic loss," see Bertschy, *Negligent Performance of Service Contracts and the Economic Loss Doctrine*, 17 J.Mar.L.Rev. 249 (1984); Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917 (1966).

**3.** As Pott points out, we did apply in a maritime case the Restatement (Second) of Torts § 402–A, which limits recovery in strict liability to "physical harm" resulting from an "unreasonably dangerous" product. *Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631 (8th Cir.1972). However, in that case no issue was raised concerning recovery for other kinds of damages.

economic losses would unfairly burden manufacturers, since they could insure against such losses. It further stated that many of the exceptions to the doctrine which permit recovery of economic losses if they are accompanied by personal injury or physical damage are arbitrary.[4] *Emerson,* 732 F.2d at 1474.

In *Miller Industries v. Caterpillar Tractor Co.,* 733 F.2d 813 (11th Cir.1984), the court affirmed an award of damages for lost profits resulting from the defendant's failure to warn the plaintiffs of a faulty engine gear and the potential problems of piston wrist pins. The court held the failure to warn formed the basis for a negligence action under maritime law even though no "physical damage" had occurred.[5] *Id.* at 818. The court based its holding on *Jig the Third Corp. v. Puritan Marine Ins. Underwriters Corp.,* 519 F.2d 171 (5th Cir.1975). In that case, the *Princess,* a shrimp boat, sank without loss of life or personal injury because of a defective propeller shaft. One of the defendants argued that no recovery should be allowed because the genesis of the relationship between the plaintiff and the defendant was contractual. The court allowed recovery for loss of the ship and its gear on the ground that the seller's liability for negligence covers any kind of physical harm, even harm to the defective chattel itself.[6] *Id.* at 175.

By contrast, *East River S.S. Corp. v. Delaval Turbine, Inc.,* 752 F.2d 903 (3d Cir.1985) (en banc), holds that no recovery is available in a tort action in admiralty for damages to a defective product itself unless the design defect creates an unreasonable risk of harm to persons or property other than the product itself. The Third Circuit has thus created a conflict with the Fifth, Ninth, and Eleventh Circuits, and we must choose which line of cases to follow. We think the better reasoning supports allowing recovery in tort, at least where, as here, there is a finding of actual negligence, as opposed to a mere defect not resulting from any lack of due care. If a manufacturer is negligent, that is, if its product was not put together with the ordinary care that a reasonably prudent manufacturer should have used, it should pay for the resulting loss. The contrary rule, that the loss should be borne by the innocent purchaser, is unjust, in our opinion. We therefore hold that the economic-loss doctrine does not bar recovery of economic losses in a negligence action under maritime law.[7] Whether sellers and buyers can alter this rule by contract is an issue we need not discuss in the present case.

## IV.

Pott also attacks the District Court's factual findings of causation and negligence. It contends that there is insufficient evidence that the use of furnace-weld pipes and the design of the original coils caused the splits. In addition, it contends that the District Court erred in awarding damages for replacing rather than simply repairing the split coils. We disagree.

The plaintiff offered undisputed evidence that furnace-weld pipes were considerably weaker than seamless pipes. It also offered evidence that purging of the pipes with compressed air removed only 70 to 80

---

**4.** The court also said that "[e]conomic loss is no different from personal injury or property damage in the sense it is also a loss that is proximately caused by the defendant's conduct." *Emerson,* 732 F.2d at 1471. We agree.

**5.** The court earlier stated that "physical damage" was a term of art contemplating an accident "'involving some violence or collision with external objects.'" *Miller,* 733 F.2d at 817, n. 6, quoting Note, *Economic Loss and Product Liability Jurisprudence,* 66 Colum.L.Rev. 917, 918 (1966).

**6.** Arguably, the damage in *Jig the Third* was not "economic loss," since it resulted from a dangerous condition (the ship's sinking) created by a defect in the defendant's product, but the court in *Miller* interpreted *Jig the Third* as holding that economic loss per se was recoverable in a negligence action under federal maritime law. *Miller,* 733 F.2d at 817–18.

**7.** This holding makes it unnecessary to discuss plaintiff's breach-of-warranty theory, which would provide an alternative basis for recovery.

per cent. of the water, and that the water remaining would freeze and cause splits in the pipes. In addition, it showed that no splits occurred after Ingram replaced the original coil systems with new systems using seamless pipe and an altered design to facilitate water drainage. This evidence convinces us there is no clear error in the District Court's finding of causation and negligence, or in its finding that the splitting problem could not be cured by repair, but required the replacement of the entire coil systems.

## V.

■ Ingram cross-appeals, arguing that the District Court erred in denying damages for loss of use of the barges during the time that the pipes leaked. The court denied such damages on the ground that they were speculative. The only evidence that Ingram offered to prove lost business was that some customers made "inquiries" about rates for shipping petroleum during this time. Ingram produced no evidence that any of its customers made offers that it refused because of the unavailability of the barges. We agree with Pott that the District Court did not clearly err in finding this evidence insufficient to make out a claim for loss of use.

Affirmed.