**INGRAM RIVER EQUIPMENT, INC., Appellee,**

v.

**POTT INDUSTRIES, INC., Appellant.**

No. 84–1371.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1987.

Decided April 14, 1987.

Rehearing and Rehearing En Banc Denied June 1, 1987.

W. Stanley Walch, St. Louis, Mo., for appellant.

Elmer Price, St. Louis, Mo., for appellee.

Before ARNOLD, JOHN R. GIBSON, and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

This case, which is before us on remand from the Supreme Court, concerns damage claims for defective design and construction of four tank barges that defendant Pott Industries, Inc., built for plaintiff Ingram River Equipment, Inc. The District Court[1] found Pott liable for negligence under federal maritime law and for breach of the implied warranty of fitness for a particular purpose under Mo.Ann.Stat. § 400.2–315. 573 F.Supp. 896 (E.D.Mo. 1983). On appeal, we affirmed the District Court's judgment on the negligence theory, rejecting Pott's argument that no recovery is available in an admiralty tort action for "economic loss," that is, for damages to a defective product itself, rather than to persons or other property. 756 F.2d 649, 652–53 (8th Cir.1985). However, the Supreme Court decided in *East River Steamship Corp. v. Transamerica Delaval, Inc.,* —— U.S. ——, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986), that there is no negligence or strict products liability in admiralty where the defective product of a manufacturer in a commercial relationship injures only itself. The Court consequently vacated our decision in this case, remanding it to us for further consideration. —— U.S. ——, 106 S.Ct. 3269, 91 L.Ed.2d 360 (1986). We must now evaluate the District Court's alternative, breach-of-warranty theory of liability, a holding that we found unnecessary to address in our first opinion. 756 F.2d at 653 n. 7. We again affirm the judgment of the District Court, except that we disallow its award of prejudgment interest.

I.

Ingram, a barge operator, contracted with Pott, a builder of boats and barges, to purchase four barges and specified that they be equipped with steam-coil systems

for heating heavy petroleum products and other heavy liquid cargo; heating makes unloading such cargo easier. Pott submitted plans for the steam-coil systems to Ingram, which approved them. Pott then installed the systems, using furnace-weld pipe as specified in the plans, and delivered the barges to Ingram. Eventually, numerous leaks developed in the steam coils in all four barges. This was caused by water that remained in the coils after steaming and froze. Ingram had repairs made on the coils, but ultimately, in the face of continued leakage problems, had the systems replaced. The replacement systems used seamless pipe, which is stronger than furnace-weld pipe, and were redesigned to facilitate removal of condensed water. Pott refused to pay for the replacements, and Ingram brought this suit.

On Ingram's breach-of-warranty claim, the District Court held that Pott broke its implied warranty of fitness by using pipe so weak that the barges could not serve their particular purpose of carrying heavy oil. The Court awarded damages of $361,757 for repair and replacement of the coils, and prejudgment interest at a rate of 9 per cent.

II.

Ingram's warranty claim is predicated upon Mo.Ann.Stat. § 400.2–315, which adopts Uniform Commercial Code (UCC) § 2–315 as the law of Missouri. This statute states:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose.

The District Court held that Ingram could not recover from Pott on implied-warranty-of-merchantability or express-warranty theories, 573 F.Supp. at 903, and Ingram has not appealed these rulings. An implied

1. The Hon. H. Kenneth Wangelin, Senior United States District Judge for the Eastern and West- ern Districts of Missouri.

warranty of merchantability—a warranty that the goods were fit for their ordinary uses—would have arisen pursuant to Mo. Ann.Stat. § 400.2–314, but was displaced here, the District Court concluded, by the express warranties embodied in the specifications approved by Ingram. See Mo.Ann. Stat. §§ 400.2–316 Comment 9, and 400.2–317(c). Since the furnace-weld pipe and the coil design Pott employed were called for by the approved specifications, there was no breach of these express warranties. On the other hand, where the course of dealing between the parties establishes the requirements for a warranty of fitness, an exclusion or modification of that warranty must be written and conspicuous, Mo.Ann.Stat. § 400.2–316, and there is no such provision in the agreements between Pott and Ingram.

■ Pott's position is that several prerequisites to the creation of an implied warranty of fitness for a particular purpose were not met here. First, Pott argues that Ingram's purpose for the goods here was an ordinary rather than a particular purpose. The definition of what constitutes a particular purpose is discussed in Comment 2 to § 400.2–315, which states in pertinent part:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

However, taking the Comment's illustration a step further, where shoes are sold as mountain-climbing shoes, by, e.g., a store specializing in mountain-climbing gear, use of the shoes to climb mountains is not use for a particular purpose. R. Anderson, 3 *Anderson on the Uniform Commercial Code,* § 2–315:37 (3d ed. 1983). See generally *Id.* at §§ 2–315:36–40; A. Squillante &

J. Fonseca, 3 *Williston on Sales* § 19–5 (4th ed. 1974).

Ingram's purpose for the goods it purchased from Pott was to use them to carry heavy petroleum products on the Mississippi and its tributaries and to heat those products to facilitate their discharge in cold climates. Pott characterizes the goods at issue as heating-coil-equipped tank barges, and argues that carrying and heating heavy petroleum products is the customary use of such products. Pott maintains that Ingram's use of the barges and the heating coils is not unique or peculiar to Ingram's business, since others use heating-coil-equipped tank barges in precisely the same manner; Pott itself had constructed over thirty such barges for use in the same manner before it built these four for Ingram.

Ingram, however, rejoins that Pott errs in suggesting that its use of the goods must be unique to fall within the fitness-for-a-particular-purpose warranty, arguing instead that the question is one of degree. According to Ingram, the proper characterization of the goods here is tank barges, rather than heating-coil-equipped tank barges. Tank barges, Ingram continues, are used to carry a multitude of cargoes, including a variety of chemicals, molasses, and oils and fuel oils of many kinds. The barges here were equipped with steam coils to enable Ingram to carry a particular kind of cargo—cargo that sometimes requires heating to aid discharge. Further, neither Pott nor Ingram deals solely or predominantly in barges that have steam coils; Pott builds and Ingram operates all sorts of barges. In these circumstances, Ingram concludes, the particular-purpose requirement is met.

We agree with Ingram that its use of the goods need not be one-of-a-kind to meet the requirements of § 400.2–315. It is doubtful that even the Comment's example of using a shoe to climb mountains would qualify as a unique use of the shoe. Instead, as we read Comment 2, the key inquiry is not whether anyone else can be found who puts the goods to the same use, but whether the buyer's use is sufficiently

different from the customary use of the goods to make it not an ordinary use of the goods; that a buyer's use is not entirely idiosyncratic does not mean that it is ordinary. See R. Anderson, 3 *Anderson on Sales, supra,* § 2–315:37. Therefore, that others put tank barges to the same use as Ingram does not preclude finding that a warranty of fitness exists.

Whether Ingram's purpose diverges sufficiently from the customary purposes of other buyers to be considered particular turns to a great extent on whether one accepts Pott's characterization of the goods as heating-coil-equipped tank barges, or instead accepts Ingram's portrayal of them as tank barges, which have been equipped with heating coils to serve a particular purpose. And this in turn hinges upon how the factual context in which Ingram and Pott struck their bargain is interpreted. To return to the Comment's shoe illustration, is this case more like one in which a buyer goes to a general shoe store and buys a pair of shoes for mountain climbing, or one in which a buyer goes to a mountain-climbing gear store to buy shoes for this purpose? This is, ultimately, a question of fact. See Mo.Ann.Stat. § 400.2–315, Comment 1 (whether an implied warranty of fitness for a particular purpose "arises in any individual case is basically a question of fact."). Here, since Ingram operates and Pott builds barges for a variety of uses, we are unable to conclude that the District Court was clearly erroneous in finding that an implied warranty of fitness for a particular purpose arose.

Pott argues that the District Court's opinion made no such finding, that it found only that the pipe supplied to Ingram was intended to be used in a steam coil heating system, and that the pipe did not serve its intended purpose. See 573 F.Supp. at 902. Any pipe furnished for use in a steam coil heating system, Pott argues, would be used to heat product in order to discharge it more easily, so such a use cannot be called a particular purpose. If the District Court opinion contained only the paragraph relied on by Pott in advancing this argument, it might have merit, but we think it would be a mistake to parse the opinion as if it were a regulation or a section of the Internal Revenue Code. When the entire opinion is read in context, it is apparent to us that the District Court regarded the product being sold not as pipe, but rather as barges, see 573 F.Supp. at 898, that it believed the barges to be intended for a particular purpose, that is, the transportation of heavy oil, and that it found the barges inadequate for this particular purpose because they were equipped with defective pipe. It is arguable, and Pott has argued, that such a view of the transaction is inconsistent with the construction placed on § 2–315 by some courts, but this contention also misses the mark. The Uniform Commercial Code has no force of law on its own. Its binding legal effect is derived from enactment by the legislatures of particular states. Although uniformity of interpretation is of course desirable, complete uniformity is not possible, and the Code is, in terms of the present case, simply a Missouri statute to be interpreted in the usual fashion. One problem that arises in interpretation is where to put the uncertain line between ordinary and particular purposes of goods sold. The placement of this line is a case-by-case process that reflects, over time, the public policy of the enacting state. Here, there is no opinion of the Supreme Court or Court of Appeals of Missouri in point, and the District Court, presided over by an experienced Missouri lawyer, has held in favor of Ingram's claim of warranty of fitness for a particular purpose. We do not find the District Court's opinion deficient in analysis or unreasoned. Therefore, in the absence of controlling authority from a Missouri appellate court, we defer to the views of the District Judge.

Pott next argues that the warranty of fitness is inapplicable because Ingram did not communicate any particular purpose to Pott. However, Pott does not deny that it knew the barges were to be used to carry heavy petroleum products, employing the coils to heat the petroleum to make unloading easier. Instead, Pott simply reiterates its view that this was an ordinary purpose, and adds that Ingram did not communicate any other purpose. Since we have already

rejected Pott's contention that Ingram's stated purpose was not particular, we reject this argument as well.

■ Finally, Pott assails the District Court's finding that Ingram relied upon Pott's expertise to furnish suitable barges, emphasizing that Ingram operates other such barges, that it approved the plans and specifications, and that it got Pott to alter the plans in one minor respect. We conclude, however, that there was ample evidence to support the District Court's finding. As the District Court noted, 573 F.Supp. at 902, the contract between Pott and Ingram stated that Ingram was interested only in the results obtained and that the manner and method of performing the work were under Pott's control. There was also testimony that Ingram's expertise in the area related primarily to operation and maintenance of barges, not to their design, see T. 179, 207–08, 590–91, whereas Pott was a shipbuilder, and supplied the design and specifications for the barges. That a buyer has some expertise does not bar the conclusion that he relied on a seller's superior expertise. *Venie v. South Central Enterprise, Inc.*, 401 S.W.2d 495, 499–500 (Mo.App.1966). Further, Ingram's request for minor modifications in the coil design to facilitate maintenance did not negate its reliance on Pott. See *Custom Automated Machinery v. Penda Corp.*, 537 F.Supp. 77, 83 (N.D.Ill.1982). Therefore, it cannot be said that the District Court's conclusion that Ingram relied on Pott was clearly erroneous.

Accordingly, we affirm the District Court's conclusion that an implied warranty of fitness for a particular purpose was created in the sale of the barges.

### III.

Pott also asserts that, in any event, as a result of the Supreme Court's rejection of the maritime tort claim, a new trial upon liability on the warranty theory, or, alternatively, upon damages, is now necessary. We disagree.

■ Pott argues that it is entitled to a new trial on liability because it has been deprived of the right to have a jury hear the warranty claim. Pott acknowledges that it did not demand a jury, but explains that it did not do so because the presence of the maritime-tort claim in the suit enabled Ingram to designate the action a proceeding in admiralty, Fed.R.Civ.P. 9(h) and 28 U.S.C. § 1333, precluding Pott from having a jury hear the warranty claim. This argument is insubstantial. The presence of the admiralty claim did not bar Pott from obtaining a jury trial on the warranty claim, which was a claim at law. See *Fitzgerald v. United States Lines*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Pott waived its right to a jury trial by failing to serve a timely jury demand. Fed.R.Civ.P. 38(d).

■ Pott contends that a new trial on damages is necessary on the theory that the District Court, for some unexplained reason, found Pott's evidence concerning mitigation of damages irrelevant in assessing damages under the maritime tort claim; this mitigation evidence, Pott continues, is clearly relevant under the warranty claim. Pott cites as support for its view the District Court's response to Pott's contention that simple repairs, rather than replacement of the heating-coil systems, would have remedied the problem; the Court stated: "because the Court has found that the design and the material were negligently defective, defendant's contention is irrelevant." 573 F.Supp. at 903. We do not agree with Pott's belief that the District Court meant by this to say that mitigation evidence is not to be considered in assessing damages under a negligence theory; indeed, Pott has not identified and we do not see any reason why the District Court would have thought this to be the law in negligence cases. Instead, we think it clear that the District Court meant by this only that simply repairing the leaks would not remedy the problem, since the same defects that led to the leaks in the first place—the weak furnace-weld pipe and the defective design—would result in leaks again if not corrected through replacement of the coils.

### IV.

We do agree with Pott that the District Court's judgment must be modified in one respect. The District Court awarded prejudgment interest at a rate of 9 per cent., based on Ingram's maritime-tort claim. See *Cargill, Inc. v. Taylor Towing Service, Inc.*, 642 F.2d 239 (8th Cir.1981). Pott asserts, and Ingram concedes, that because the Supreme Court has disallowed its admiralty claim, leaving only the state-law claim, the award should no longer include prejudgment interest. See *Continental Bank & Trust Co. v. American Bonding Co.*, 630 F.2d 606, 612 (8th Cir. 1980); *Fohn v. Title Insurance Corp. of St. Louis*, 529 S.W.2d 1, 5 (Mo. en banc 1975).

### V.

For the foregoing reasons, the judgment of the District Court is affirmed, except that its award of prejudgment interest is reversed.