**DELTA MARINE, INC., Plaintiff,**

v.

**Neil Gregg WHALEY, d/b/a Insulation Works, Ellington Insulation Co., and Childers Products Co., Defendants.**

**No. 91–44–CIV–7–MC.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Jan. 21, 1993.

Reid G. Hinson, Wilmington, NC, for Delta Marine, Inc.

Henry L. Anderson, Jr. and Thomas J. Cox, Jr., Wilmington, NC, for Whaley, d/b/a Insulation Works.

John D. Martin, Marshall, Williams & Gorham, Wilmington, NC, for Ellington Insulation Co.

David M. Duke, Young, Moore, Henderson & Alvis, Raleigh, NC, for Childers Products Co.

## ORDER

McCOTTER, United States Magistrate Judge.

This matter is before the court on Delta's motion to amend its complaint, Childers motions to dismiss and for summary judgment, Ellington's motion for summary judgment, and for a consideration of Whaley's jury demand. The court allowed Delta to withdraw its motion to amend and Childers to withdraw its motions for summary judgment. Childers' motion to dismiss was allowed. The court granted Ellington's motion for summary judgment on all claims except Whaley's claims for breach of implied warranties.

## FACTS

Delta Marine, Inc. (Delta) entered into a contract with the United States Coast Guard to repair the USCGC Cowslip, a buoy tender and public vessel of the United States. The Cowslip was docked in Delta's floating dry dock so that the underwater portion of the hull could be cleaned and painted and the main propulsion shaft thrust bearing altered.

Delta's floating dry dock is located upon the navigable waters of the United States, the Northeast Cape Fear River. The dry dock is permanently moored to the shore but is towed between various berths when necessary. The dry dock had been moved to accommodate the Cowslip. The Cowslip's crew was to remain on board throughout the period of the contract, which was originally scheduled for thirty-six days.

A portion of Delta's contract with the Coast Guard required the removal and replacement of insulation in the Cowslip's refrigerated spaces. Delta obtained a marine chemist's certificate prior to commencing the work to ensure that the work area was safe for men and hot work. Delta removed the insulation.

Delta subcontracted with Gregg Whaley (Whaley) to re-insulate the refrigerated space. Whaley agreed to use products that satisfied certain military specifications to insulate the reefer. Because Whaley was unable to obtain an adhesive that met the specification, he purchased CP–85 from Ellington Insulation Company (Ellington) as a substitute. The substitute, CP–85, is manufactured by Childers Products Company (Childers).

On 30 October 1989, a spark from an electric plug ignited vapors from CP–85. The resulting fire allegedly caused personal injuries, damage to the Cowslip, and the termination of Delta's contract with the Coast Guard, along with other ancillary injuries.

Delta brings this action against Whaley, Childers, and Ellington to recover for its damages. Whaley filed cross-claims against Childers and Ellington. Whaley also filed a counter-claim against Delta.

## ANALYSIS

### I. CHILDERS' MOTION TO DISMISS

Childers contends that Whaley's alleged violations of the Unfair and Deceptive Trade Practices Act, Chapter 75 of the North Carolina General Statutes (Chapter 75), conflicts with the standard for awarding punitive damages established by general maritime law. Childers claims, properly, that admiralty law supersedes conflicting state law.

Where a conflict between a state statute and judicially established admiralty law exists, the state law must yield to admiralty just as if the admiralty law had been codified by an Act of Congress. *Wilburn Boat Co. v. Fireman's Ins. Co.,* 348 U.S. 310, 314, 75 S.Ct. 368, 371, 99 L.Ed. 337 (1954). Substantive state remedies also must conform to federal maritime standards. *Offshore Logistics, Inc. v. Tellentire,* 477 U.S. 207, 223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986). The court must now decide whether a judicially established admiralty standard governs punitive damages, and, if so, does it conflict with Chapter 75? This court answers both of these issues affirmatively.

Courts have established standards that apply to punitive damages in admiralty cases. Punitive damages are appropriate in maritime tort actions where defendant's

actions were intentional, deliberate, or so wanton and reckless as to demonstrate a conscious disregard for the rights of others. *Muratore v. M/S Scotia Prince,* 845 F.2d 347, 354 (1st Cir.1988). The Fifth Circuit Court of Appeals in *Miles v. Melrose,* 882 F.2d 976, 989 (5th Cir.1989), agreed and held that an award of punitive damages is recoverable only when the defendant is guilty of "gross negligence, or actual malice or criminal indifference which is the equivalent of reckless or wanton misconduct."

■ Chapter 75 awards treble damages upon a showing of an unfair and deceptive trade practice, thus the act is punitive in nature. The standard enunciated by the courts in *Muratore* and *Miles* conflicts with the elements required to recover for treble damages under Chapter 75. In *Marshall v. Miller,* 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981), the Court stated that Chapter 75 was enacted "to establish an effective private cause of action for aggrieved consumers ..." because the common law remedies had been ineffective. Unlike admiralty law, Chapter 75 does not require a showing of gross negligence, actual malice, or reckless or wanton misconduct. *Miles,* 882 F.2d at 989. A practice is deceptive and treble damages must be awarded under Chapter 75 if the trade practice has the capacity or tendency to deceive. *Johnson v. Phoenix Mutual Life Insurance Co.,* 300 N.C. 247, 266 S.E.2d 610 (1980). Chapter 75, therefore, allows recovery under a much lower standard than required by admiralty law.

A Texas state court's analysis, in *Ingram Barge Co. v. Trifinery, Inc.,* 1991 A.M.C. 1450 (1990), is persuasive. The case was brought in state court but involved civil admiralty claims. The court found the deceptive trade practice statute's requirement in conflict with the higher standards of maritime law. *Id.* at 1458. In Texas, actual damages are trebled if the deceptive conduct was committed knowingly. Tex.Bus. and Com.Code Ann. § 17.-50(b)(1) (Vernon Supp.1990). Knowledge does not rise to the level of gross negligence, actual malice, reckless, or wanton

conduct as required by general maritime law. *Ingram,* 1991 A.M.C. at 1459. The court, therefore, held that the maritime standard for awarding punitive damages supersedes the state standard when dealing with civil admiralty claims.

The standard for awarding treble damages under Chapter 75 conflicts with the requirements for awarding punitive damages under admiralty law. Whaley's claim under North Carolina's Unfair and Deceptive Trade Practice Act, therefore, is dismissed. *Wilburn,* 348 U.S. at 314, 75 S.Ct. at 370.

## II. ELLINGTON'S MOTION FOR SUMMARY JUDGMENT

Ellington moves for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure on Whaley's remaining claims. Whaley seeks damages from Ellington based on strict products liability, negligent failure to warn, breach of an express warranty, and breach of implied warranties of merchantability and fitness for a particular purpose. This court grants summary judgment on all claims except the breach of implied warranties of merchantability and fitness for a particular purpose.

Summary judgment must be granted if, after an adequate time for discovery, "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). Rule 56(c) requires an examination of the entire record including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in the light most favorable to the non-moving party. The court must also consider every inference that can be drawn from this evidence. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

The non-moving party, however, cannot "rest on the mere allegations" of the pleadings but must produce "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insuf-

ficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. *Strict Products Liability*

■ This court has admiralty jurisdiction over this products liability action. *Delta v. Whaley,* 91–44–CIV–7–MC (E.D.N.C. 23 December 1992). The doctrine of strict products liability applies to admiralty and maritime claims. *East River Steamship Corp. v. TransAmerica DeLeval, Inc.,* 476 U.S. 858, 864–66, 106 S.Ct. 2295, 2298–99, 90 L.Ed.2d 865 (1986). Whaley's strict liability claim is based on a failure to warn of the dangerousness of the product and, therefore, governed by Section 402A of the Restatement (Second) of Torts. *Id.*

Under Section 402A, a manufacturer is liable if a warning is inadequate without any consideration of negligence. *Id.* Although Section 402A applies to sellers as well as manufacturers, it neither subjects sellers to strict liability nor requires a determination of negligent conduct. Most courts rely on Comment j of Section 402A for determining when a seller is liable for failure to give an adequate warning. *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 433, 601 A.2d 633, 639 (1992). Comment j considers sellers liable for failure to give an adequate warning only when the seller knew or should have known of the danger. *Id.* Professors Prosser and Keeton also support this requirement. Prosser and Keeton, *Torts* § 96 at 685 (5th ed. 1984).

■ This court adopts the analysis of Section 402A enunciated by the court in *Owens* and Professors Prosser and Keeton. Strict liability for failure to give an adequate warning will be imposed for civil admiralty claims only upon a showing that the seller knew or should have known of the hazard about which it failed to warn.

■ Ellington claims that it had no knowledge that a spark could ignite the vapors emitted by CP–85. Whaley contends that both the warning label and the material safety data sheet (MSDS) failed to warn of the product's extreme flammability. Ellington responds that these alleged insufficiencies support its lack of knowledge and failure to warn because it had no other way of discovering the product's extreme flammability. Whaley produced no evidence to show that Ellington had alternative means to know of the product's dangerous propensities; therefore, he has failed to show a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e). Ellington's motion for summary judgment of Whaley's strict products liability claim is granted.

### B. *Negligent Failure to Warn*

■ Whaley has alleged also that Ellington negligently failed to warn him of the danger associated with CP–85. In a strict products liability action, manufacturers who place goods into the stream of commerce have an absolute duty to warn all foreseeable users of anything that would render the product inherently dangerous. *East River,* 476 U.S. at 866, 106 S.Ct. at 2300. A manufacturer or seller, however, is liable for negligent failure to warn only when the seller knew of the products dangerous propensities and had reason to know that the buyer would not realize the product's menacing propensities. *Simpson v. Hurst Performance, Inc.,* 437 F.Supp. 445 (M.D.N.C.1977) *aff'd. without opin.,* 588 F.2d 1351 (4th Cir.1978); *see also, Ziglar v. E.I. Dupont De Nemours & Co.,* 53 N.C.App. 147, 280 S.E.2d 510 (1981).

■ Whaley conceded that he could produce no evidence to show that Ellington had knowledge that a spark would ignite the vapors emitted by CP–85. Since knowledge is an element of a seller's negligent failure to warn, Whaley has failed to produce facts that show a genuine issue of material fact for trial. Ellington's motion

for summary judgment on Whaley's claim for negligent failure to warn, therefore, is granted. Fed.R.Civ.P. 56(c).

## C. *Breach of Express and Implied Warranties*

■ Breach of warranty claims associated with the manufacture and sale of goods brought as civil admiralty claims are governed by the Uniform Commercial Code, Art. 2 §§ 313–315. *Ingram River Equipment, Inc. v. Potts Industries, Inc.,* 816 F.2d 1231 (8th Cir.1987). The Uniform Commercial Code (Code) establishes standards for express warranties and implied warranties of merchantability and fitness for a particular purpose.

Ellington denies making any recommendation for the job eventually undertaken by Whaley. Whaley contends that his wife submitted the requisite specifications for the job to Ellington. Ellington informed her that it did not carry a product that met the specifications. According to Whaley, his wife explained the job and asked Ellington to recommend a suitable product. Ellington then sold Whaley CP–85.

Distinguishing between the three warranties is crucial to reaching the proper conclusion in this case. Express warranties are created when the seller makes an affirmation of fact or promise relating to the goods that becomes the basis of the bargain for the purchase of the goods. UCC § 2–313. A breach of an implied warranty of merchantability occurs when the seller is a merchant, the good is not fit for the ordinary purpose for which it is sold, and the deviation from the standard of merchantability caused injury. White and Summers, Uniform Commercial Code § 9–7 at 466. The warranty of fitness for a particular purpose is narrower and more precise. Liability for an implied warranty of fitness for a particular purpose is imposed when the seller knew of a buyer's particular purpose, the seller knew that the buyer was relying on its skill or judgment, and the buyer did in fact rely on the seller's skill or judgment. *Id.* § 9–10 at 481.

■ The court begins by considering the breach of the implied warranty of mer-

chantability claim. This warranty is akin to strict liability in that the seller's action is irrelevant. *Id.* § 9–7 at 466. The inquiry at trial is whether the product was in fact unfit for its ordinary use. *Id.* Section 2–314(2)(e) expressly requires that a good be "adequately contained, packaged, and labeled ..." to be fit for its ordinary purpose.

The inquiry on this motion for summary judgment is whether a factual dispute exists concerning the merchantability of CP–85. Whaley alleges that the label was inadequate and submits affidavits and depositions to support the contention. The adequacy of CP–85's label, therefore, is in dispute and creates a genuine issue of material fact for trial. The court denies Ellington's motion for summary judgment on the breach of implied warranty of merchantability claim.

■ The other implied warranty must also remain for trial. A seller implicitly warrants a product to be fit for a particular purpose when the seller supplies a product knowing of the buyer's intended use for the product and realizing that the buyer is relying on the seller's judgment. An affirmative representation as to the product's value is not necessary.

■ Ellington could not supply a product that met the military specifications required for the job. Whaley contends that his wife explained to Ellington that she needed an adhesive to attach insulation in a ship's cooler. She then asked Ellington for an adhesive from its inventory that could be used for the job. According to Whaley, Ellington recommended CP–85, and Whaley's wife purchased the product in reliance on this recommendation. Whaley, therefore, has submitted facts sufficient to create a genuine issue of material fact for trial.

■ The evidence submitted by Whaley, although sufficient to support its claim for breach of implied warranty of fitness for a particular purpose, fails to establish a genuine issue of material fact for trial on the breach of an express warranty claim. An express warranty results

from a seller's affirmative representation of the product as being free from the defect that caused the injury. *Tyson v. Ciba–Geigy Corp.*, 82 N.C.App. 626, 347 S.E.2d 473 (1986). Although Whaley contends that Ellington sold CP–85 in response to his wife's inquiry, he has not produced evidence of any affirmative statement made by Ellington warranting against a spark igniting the vapors emitted by CP–85.

Whaley's only support for the breach of express warranty claim rests on Ellington's alleged statement that CP–85 would "do a good job for what he was going to use it for." An opinion that a product will do a good job, however, does not rise to the level of an express warranty. UCC § 2–313(2). In *Tyson,* a farmer ordered a herbicide and explained its intended use. *Id.* at 627, 347 S.E.2d at 474. The sales representative recommended a different product, stating that the product would work just as well. *Id.* Although the farmer relied on the recommendation, the court found that the salesman's statement supporting his product was not an express warranty, but merely an opinion of his product's value. *Id.*

Ellington's statement that CP–85 would do a good job is also an opinion of the product's value. Whaley has submitted no express statement by Ellington warranting CP–85 as being free from the danger that caused the injury. Whaley has failed to produce evidence of an express warranty and, therefore, has not established a genuine issue of material fact for trial. Fed. R.Civ.P. 56(c). Ellington's motion for summary judgment on the breach of express warranty is granted.

### III. WHALEY'S JURY DEMAND

■ Whaley demands a jury trial. The United States Supreme Court in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1962), held that the Seventh Amendment does not require jury trials in admiralty cases. *See also,* Fed.R.Civ.P. 38(e). The Court further stated, however, that no statute, rule of procedure, civil or admiralty law forbids

jury trials in maritime cases. *Id.* Since Article III of the Constitution vests the federal courts with admiralty jurisdiction, Congress has left the Court with "the responsibility for fashioning the controlling rules of admiralty law." *Id.* Once a plaintiff invokes admiralty procedures in this district, a jury trial will not be granted without a showing of some alternative source of federal jurisdiction. *Rose v. Dredge Enterprise*, 120 F.R.D. 39, 40 (E.D.N.C.1988). This court denies Whaley's jury demand, finding no independent jurisdictional basis sufficient to support his claim in federal court.

■ Traditionally, federal courts exercising admiralty jurisdiction have not allowed jury trials. In *Fitzgerald,* however, the Court held that where adherence to this tradition resulted in cumbersome procedures and placed unnecessary obstacles in litigants' paths, a jury trial may be applicable. 374 U.S. at 20–21, 83 S.Ct. at 1650. Where admiralty claims are joined with claims arising under diversity or federal question jurisdiction, all claims must be submitted to a jury upon demand. *Id.*

In *Hassinger v. Tideland Elec. Membership Corp.*, 627 F.Supp. 65 (E.D.N.C.1985), the court granted a jury trial where claims based on diversity were joined with claims based on admiralty jurisdiction. The court found that the lack of diversity between all parties did not violate the holding of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), because each claim was based on an independent basis sufficient to support federal jurisdiction. *Hassinger,* 627 F.Supp. at 75. Where the diversity component would entitle the litigants to federal jurisdiction in a separate action, the admiralty and diversity claims must be submitted to the jury. *Id.* at 76.

■ The current situation is different; no independent jurisdictional basis exists. Whaley's remaining claims are before this court based solely on admiralty jurisdiction. Although not forbidden, no right to trial by jury exists on a civil admiralty claim. Fed. R.Civ.P. 38(e).

Absent a showing of a right to a jury, courts have strictly adhered to the tradition of non-jury trials on civil admiralty claims. The court in *Hassinger* acknowledged this tradition, holding that litigants will not be permitted to manipulate the pleadings in order to submit all claims to the jury. *Id.* The opportunity for a jury trial is contingent on the finding of diversity jurisdiction or some other independent basis for federal jurisdiction. *Id.* Whaley's jury demand is denied.

## CONCLUSION

Whaley's claim for punitive damages based on a violation of North Carolina's Unfair and Deceptive Trade Practices Act conflicts with the general maritime law of punitive damages and, therefore, is dismissed. In addition, Whaley has failed to convince the court that a genuine issue of material fact exists on his claims against Ellington for strict products liability, negligent failure to warn, and breach of an express warranty. Whaley's claims for breach of implied warranties remain.

Whaley is not entitled to a jury trial because none of its claims are based on independent federal jurisdiction. Childers' motion to withdraw its summary judgment motion is granted. Likewise, Delta's request to withdraw its motion to amend is allowed.